**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Christopher M. Rigali*  *Suite 400*  *DIRECT: 410-209-4831*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4800*
*Christopher.Rigali@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-3124*

March 31, 2020

The Honorable Deborah L. Boardman
United States Magistrate Judge
United States District Court
  for the District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

Via CM/ECF

    Re:    *United States v. Rajeim Ali Bradshaw*, DKC-20-070

Dear Judge Boardman:

    In advance of tomorrow's detention hearing in the above-referenced case, I write to provide the Court with facts relevant to the Government's motion for detention. In the Government's view, there are no conditions or combination of conditions of release that will reasonably assure (1) the Defendant's appearance at future court proceedings and (2) the safety of the community. 18 U.S.C. § 3142(f), (g). While defense counsel has yet to raise any arguments about the risks presented by the spread of COVID-19, the Government believes the risks posed by pre-trial release *in this case* outweigh those risks.

    The Defendant is currently charged with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g) but, as explained below, this case involves much more than the unlawful possession of a gun by a prohibited person.[1] And of course, those facts are part of the "nature and circumstances" of the offense charged.

    On June 20, 2019, the Baltimore County Police executed a search warrant at the Defendant's residence, 5698 Leiden Road, Baltimore. The police obtained that search warrant based on a drug arrest of the Defendant's son, Urek, which occurred earlier that day right outside of the residence. Based on the statements of the Defendant's wife, Pamela Bradshaw, it is believed that the only three residents of 5698 Leiden Road were the Defendant, Pamela Bradshaw, and Urek Bradshaw.

---

[1] There is a strong likelihood of a superseding indictment in this case but, as the Court is aware, the Government has essentially no ability to seek a superseding indictment until the grand jury resumes with its sessions.

In the basement and spare bedroom of 5698 Leiden Road, law enforcement recovered <u>5.5 kilograms of fentanyl, a kilogram of heroin</u>, and host of manufacturing and distribution paraphernalia.[2]  As the Court has probably been made aware, two milligrams of fentanyl can be a lethal dose, *see* DEA Officer Safety Alert, *available at* https://www.dea.gov/sites/default/files/2018-07/hq092216_attach.pdf; as such, th<u>e amount of fentanyl recovered from 5698 Leiden Road is enough to kill millions of people</u>.

In addition to the staggering quantity of drugs found in the basement and spare bedroom, law enforcement recovered from the <u>Defendant's bedroom</u> two firearms (an AR-15 style rifle and a .40 caliber pistol), live ammunition, about an ounce of cocaine, over $40,000 in cash, and numerous cell phones.  A search of those cell phones pursuant to a warrant revealed a number of drug trafficking-related conversations and contacts with various international phone numbers (e.g., Mexico and others).

On these facts alone, I think there is a strong basis for detention.  But those aren't the only facts. Following Urek Bradshaw's arrest, he was charged in Baltimore County with essentially all of the drugs recovered from the house.  What, then, did the Defendant do?  On information and belief, the Defendant, knowing that he possessed with intent to distribute (whether solely or jointly) the drugs in the common areas of the house, abandoned his home, figuratively leaving his own son "holding the bag."  The Defendant's abandonment of the home <u>that he owns</u> was seemingly confirmed by Pamela Bradshaw in a jail call between her and her son, Urek, in which she indicated that she had no intention of ever returning to 5698 Leiden Road.[3]

Law enforcement was able to track down and arrest the Defendant in March 2020.  At the time of his arrest, the Defendant was meeting with another individual in his vehicle in a parking lot.  A search of the vehicle yielded the recovery of over $17,000, $900 of which was on the Defendant's person.  Law enforcement also recovered two phones that it believes belonged to the Defendant.  After Defendant was seized, law enforcement attempted to confirm that they had the right person in custody by asking the Defendant what his name was.  The Defendant would not provide his name to law enforcement.

Finally, it is worth noting that if the Defendant is charged with the 5.5 kilograms of fentanyl recovered from his home, his base offense level would be a 34 (a Guidelines range of ~12.5–15.6 years' imprisonment for the lowest criminal history category).  That base offense level does not take into account any enhancements for his simultaneous possession of firearms, at least one of which was stolen, nor does it account for the fact of a potential consecutive term of imprisonment of 5 years under 18 U.S.C. § 924(c).  This is all to say that the Defendant now has <u>significant</u> potential criminal liability exposure, giving him all the more reason to abscond.

In short, the nature and circumstances of this case include the following:  (1) the unlawful possession of multiple firearms, including an AR-15 style rifle, and ammunition; (2) the suspected possession with intent to distribute 5.5 kilograms of fentanyl and a kilogram of heroin; (3) significant evidence of drug trafficking, including large amounts of cash and drug-related text messages; (4) numerous foreign contacts; (5) abandoning the home that he owns immediately or

---

[2] Lab analysis for the drugs in this case has already been completed.

[3] Law enforcement also believes that the Defendant changed vehicles after learning of the search at 5698 Leiden Road.

shortly after the recovery of a large amount of dangerous drugs and firearms, despite the fact that his own son was left to be charged with those drugs; (6) suspected continued involvement in drug trafficking through the time of his arrest; and (7) significant potential criminal liability exposure, providing further incentive to flee the jurisdiction and avoid prosecution.

I anticipate both parties addressing the factors set forth in 18 U.S.C. § 3142(g) at tomorrow's hearing and will therefore reserve the balance of my discussion for the hearing.

        Respectfully,

        Robert K. Hur
        United States Attorney

By: _____
        Christopher M. Rigali
        Assistant United States Attorney
        36 South Charles Street, Fourth Floor
        Baltimore, Maryland 21201
        (410) 209-4800